No. 31,204.

JOHN C. SIMPSON, *Appellee*, v. THE CITY OF KANSAS CITY, *Appellant*.

(22 P. 2d 955.)

Opinion filed June 10, 1933.

*Alton H. Skinner*, city attorney, *George H. West, John C. O'Brien, James K. Cubbison* and *William H. Towers*, assistant city attorneys, for the appellant.

*James M. Meek* and *A. M. Etchen*, both of Kansas City, for the appellee.

The opinion of the court was delivered by

HARVEY, J.: This is a workmen's compensation case. Claimant was employed by the city in its street department. While breaking cement in repairing a pavement a small particle of cement struck him in the eye, resulting in impaired vision. He made claim for compensation. The commissioner of compensation heard the evidence in order to make a record which could be reviewed, but held

the parties were not subject to the provisions of the workmen's compensation act and denied compensation. Claimant appealed to the district court. The court reviewed the record, held the parties were operating under the workmen's compensation act, and computed and allowed compensation under the evidence. The respondent has appealed.

The principal question raised by the appeal is whether the city, in performing its governmental functions, is operating under the workmen's compensation act without having filed with the compensation commissioner its election to do so. Prior to the rewriting of our compensation act in 1927 (Laws 1927, ch. 232, R. S. 1931 Supp. 44-501 *et seq.*) it had become the settled law of this state that counties and municipalities of the state, in performing their normal functions, were not engaged in "trade or business" for profit, and were not within the provisions of the workmen's compensation act. (*Udey v. City of Winfield,* 97 Kan. 279, 155 Pac. 43; *Griswold v. City of Wichita,* 99 Kan. 502, 162 Pac. 276; *Gray v. Sedgwick County,* 101 Kan. 195, 196, 165 Pac. 867; *Roberts v. City of Ottawa,* 101 Kan. 228, 229, 165 Pac. 869; *Redfern v. City of Anthony,* 102 Kan. 484, 485, 170 Pac. 800; *Robertson v. Labette County Comm'rs,* 122 Kan. 486, 252 Pac. 196.)

But if the municipality, exercising its proprietary capacity through the water and light department, produced water or electric energy which it sold to consumers, its employees in that department were within the act, for, with respect to such functions, the city was engaged in trade or business for a financial return or profit. (*McCormick v. Kansas City,* 127 Kan. 255, 273 Pac. 471.) In *Early v. Burt,* 134 Kan. 445, 453, 7 P. 2d 95, it was pointed out that these decisions were under the statute before it was changed in 1927, but it was not there held that the new act makes any change with respect to municipalities operating under the act.

It is contended by appellee here that the section of the former act (R. S. 44-505) was so amended by the later act (Laws 1927, ch. 232, § 5, R. S. 1931 Supp. 44-505) as to bring cities and other subdivisions of the state within the provisions of the act. The pertinent provisions of the earlier act read as follows:

"That this act shall apply only to employment in the course of the employer's trade or business on, in or about a railway, factory, mine or quarry, electric, building or engineering work, laundry, natural gas plant, county and

municipal work, and all employments wherein a process requiring the use of any dangerous explosive or inflammable materials is carried on, which is conducted for the purpose of business, trade or gain; each of which employments are hereby determined to be especially dangerous, in which from the nature, conditions or means of prosecution of the work therein, extraordinary risk to the life and limb of the workmen engaged therein are inherent, necessary or substantially unavoidable, and as to each of which employment it is deemed necessary to establish a new system of compensation for injuries to workmen."

The later act reads:

"That this act shall apply only to employment in the course of the employer's trade or business in the following hazardous employments: railways, motor transportation line, factory, mine or quarry, electric, building or engineering work, laundry, natural-gas plant, county and municipal work, and all employments wherein a process requiring the use of any dangerous explosive or inflammable materials is carried on, each of which employments are hereby determined to be especially dangerous, in which from the nature, conditions or means of prosecution of the work therein, extraordinary risk to the life and limb of the workmen engaged therein are inherent, necessary, or substantially unavoidable, and as to each of which employments it is deemed necessary to establish a new system of compensation for injuries to workmen."

Under the earlier act much litigation arose over the words "on, in or about." (See *Bevard v. Coal Co.*, 101 Kan. 207, 165 Pac. 657; *Hicks v. Swift & Co.*, 101 Kan. 760, 168 Pac. 905; *Alvarado v. Rock Crusher Co.*, 109 Kan. 192, 197 Pac. 1091; *Tierney v. Telephone Co.*, 114 Kan. 706, 708, 220 Pac. 190; *Hoops v. Utilities Co.*, 116 Kan. 598, 227 Pac. 332; *Wise v. Central Dairy Co.*, 121 Kan. 258, 246 Pac. 501; *Carter v. Uhrich*, 122 Kan. 408, 252 Pac. 240; *Strosnyder v. Strosnyder*, 123 Kan. 252, 254 Pac. 1040; *Iott v. Mosby*, 126 Kan. 294, 268 Pac. 109; *Fox v. Victory Ice Co.*, 129 Kan. 778, 284 Pac. 382.)

The later act took from the earlier one the words "on, in or about," which had produced so much uncertainty in litigation, and made a few other changes in the language. However, the statute as now before us applies "only to employment in the course of the employer's trade or business." The common meaning of the words "trade or business" is that which one conducts for financial return or profit, and the words in the earlier act had been so construed in the cases above cited. In this case the city, of course, was not, while repairing streets, engaged in a trade or business for financial return or profit. Moreover, the earlier and later statutes apply to the employer's trade or business in certain hazardous employments

"as to each of which employment it is deemed necessary to establish a new system of compensation for injuries to workmen." This necessarily carries the thought that there previously existed a system by which injured workmen might be compensated as the result of injuries, such as an action for damages at common law. No such cause of action existed against counties and municipalities except to the extent they were made liable by statute. If the legislature intended to create a liability against counties and municipalities where none existed, it would have done so in language so clear it could not well be misunderstood, as has been done with respect to injuries resulting from defects in county, township and state highways. (R. S. 68-301; R. S. 1931 Supp. 68-419.)

No case involving the liability of a county or municipality by reason of the changed language in the statutes above referred to has heretofore been presented to this court, but soon after chapter 232 of the Laws of 1927 was enacted a case came before the district court of Sedgwick county (*Southard, Claimant, v. Sedgwick County, Respondent*) with respect to the liability of a county where substantially the same question was presented as we have here. The trial judge, Hon. J. E. Alexander, gave the question careful consideration and filed a written opinion in which it was held that, in so far as the county operating under the workmen's compensation act is concerned, chapter 232 of the Laws of 1927 should receive the same construction given to the earlier statute (R. S. 44-505). This opinion, delivered in January, 1928, has been widely circulated throughout the state and generally regarded as a correct interpretation of the statute. It accords with our view.

Appellee cites and quotes extensively from *Esque v. Huntington,* 104 W. Va. 110, 139 S. E. 469, in which it was held that a municipal corporation is an employer within the meaning of the workmen's compensation law of that state, but the decision points out that the statute of that state expressly makes it so and gives the difference in statutes as the reason why the Kansas cases should not be followed. Appellee also cites several Oklahoma cases which seem to be more nearly in point, although there appears to be a lack of harmony running through them. But however those decisions might be interpreted, we are bound by our own long and consistent line of decisions to the effect that counties and municipalities, in the exercise of their normal functions, are not within the compensa-

tion act. It would not be proper for us to change that ruling unless the legislature should make it clear that it is imposing upon the counties and municipalities liabilities or obligations which previously did not exist. It is clear to us that the legislature has not done so by the amendment of our compensation law of 1927, relied upon by appellee.

The judgment of the court below will be reversed, with directions to enter judgment for respondent. It is so ordered.